IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|                                                              |     |                                 |
| ------------------------------------------------------------ | --- | ------------------------------- |
| **PHILLIP WAYNE TOMLIN,**                                    | )   |                                 |
|                                                              | )   |                                 |
| **Petitioner,**                                              | )   |                                 |
|                                                              | )   |                                 |
| **vs.**                                                      | )   | **CIVIL ACTION NO. 10-120-CG-C** |
|                                                              | )   |                                 |
| **TONY PATTERSON, Warden,**                                  | )   |                                 |
| **Holman Correctional Facility,**                            | )   |                                 |
|                                                              | )   |                                 |
| **Respondent.**                                              | )   |                                 |

## <u>ORDER</u>

This case is before the Court on Petitioner Phillip Wayne Tomlin's

("Petitioner") first habeas corpus petition, in which he raises thirty claims

challenging his conviction and sentence for the murder of two people on January 2,

1977. (Doc. 1). This Court previously denied Petitioner habeas relief (Doc. 32), but

in doing so it failed to take into account his motion to supplement claim number 30

in light of *Magwood v. Warden, Ala. Dept. of Corrections*, 664 F.3d 1340 (2011).

(Doc. 22). Petitioner appealed, and the Eleventh Circuit Court of Appeals vacated

this Court's order without prejudice to resolve the issues Petitioner raised in Claim

30. (Doc. 40). The Court of Appeals specifically directs this Court "to (1) determine

whether the ex post facto issues raised in Tomlin's § 2254 reply brief were properly

before the judge; (2) if so, decide those issues; (3) issue a decision on Tomlin's motion

to supplement his § 2254 petition; and (4) if the judge grants that motion, decide the

ex post facto and due process, fair warning claims raised in Tomlin's proposed supplement." (Doc. 40, pp. 5–6).

Upon due consideration, the Court granted Petitioner's Motion for Supplemental Pleading in regard to the above issues. (Doc. 43, 45). Petitioner filed his supplemental brief (Doc. 46), Respondent answered (Doc. 47), and Petitioner replied (Doc. 48). All three documents are presently before the Court and ripe for consideration. For the reasons set forth below, Petitioner's habeas corpus petition is denied as to his ex post facto and due process, fair-warning claim, and the petition is denied in all other aspects.

# I. BACKGROUND

On January 2, 1977, the Mobile County police found the bodies of Richard Brune and Cheryl Moore along an Interstate 10 exit ramp in Mobile County, Alabama. Both victims suffered multiple gunshot wounds and died as a result. Police later arrested John Daniels and Tomlin for the murders of Brune and Moore.[1]

Tomlin was subsequently tried, convicted, and resentenced to death for the 1977 murders of Brune and Moore through four separate trials. Tomlin's first three convictions were reversed on direct appeal. *Tomlin v. Alabama*, 909 So. 2d 290, 290–91 (Ala. Crim. App. 2004). The courts reversed Tomlin's convictions following

---

[1] The facts are not in dispute, and Petitioner does not claim factual innocence. The Alabama Court of Criminal Appeals thoroughly recited the facts in *Tomlin v. Alabama*, 909 So. 2d 213, 224–25 (Ala. Crim. App. 2002) *rev'd in part sub nom. Ex parte Tomlin*, 909 So. 2d 283 (Ala. 2003).

his first and second capital murder trials, in 1978 and 1990 respectively[2], because of prosecutorial misconduct. *See Ex parte Tomlin*, 540 So. 2d 668, 671 (Ala. 1988); *Tomlin v. Alabama*, 591 So. 2d 550, 559 (Ala. Crim. App. 1991).

On May 28, 1993, before his third capital murder trial, a grand jury re-indicted Petitioner in a single count indictment charging him with violation of Code of Alabama § 13-11-2(a)(10). That indictment, which controls Petitioner's present sentence, reads as follows:

<u>COUNT 1</u>

> The GRAND JURY of [Mobile] County charge, that, before the finding of this indictment, Phillip Wayne Tomlin, whose name is to the Grand Jury otherwise unknown than as stated, did by one act or a series of acts, unlawfully, intentionally, and with malice aforethought, kill Richard Brune by shooting him with a gun, and unlawfully, intentionally and with malice aforethought, kill Cheryl Moore by shooting her with a gun, in violation of <u>Code of Alabama</u> 1975, § 13-11-2(10), against the peace and dignity of the State of Alabama.

(Doc. 9-1, p. 145). Petitioner was convicted of the capital murder charge, and the jury unanimously recommended life without parole. The trial judge, however, overrode the life verdict and sentenced Petitioner to death by electrocution on January 21, 1994. On June 21, 1996, The Alabama Court of Criminal Appeals reversed the conviction because of juror misconduct. *Tomlin v. Alabama*, 695 So. 2d 157, 174 (Ala. Crim. App. 1996), *on reh'g* (Sept. 27, 1996).

---

[2] Petitioner's original direct appeal remained pending until 1988 because of ongoing litigation concerning the constitutionality of Alabama's death penalty statutes. (Doc. 9, p. 5). During the appeal process, Tomlin sat on death row for roughly twenty-six years. *See Tomlin v. Alabama*, 909 So. 2d 290 (Ala. Crim. App. 2004).

In June 1999, Petitioner was again tried under the May 28, 1993 indictment. This is the conviction at issue in this case. On August 8, 2000, after a sentencing hearing, the trial judge overrode the unanimous jury verdict of life without parole and sentenced Petitioner to death. *See Tomlin v. Alabama*, 909 So. 2d 213, 275 (Ala. Crim. App. 2002), *rev'd in part sub nom. Ex parte Tomlin*, 909 So. 2d 283 (Ala. 2003). On appeal, the Alabama Supreme Court affirmed his conviction but reduced his sentence to life imprisonment without parole. *Ex parte Tomlin*, 909 So. 2d 283, 286 (Ala. 2003). The Alabama Supreme Court found Petitioner's death sentence "illegal for the absence of an aggravating circumstance enumerated in section § 13-11-6." *Ex parte Tomlin*, 909 So. 2d at 289.

During state post-conviction proceedings, Petitioner argued unsuccessfully that his life sentence without parole violated ex post facto and due process principles under the United States and Alabama Constitutions.[3] In his January

---

[3] Petitioner raised similar ex post facto concerns on direct appeal. *See Tomlin v. Alabama*, 909 So. 2d 213, 277 (Ala. Crim. App. 2002), *rev'd in part sub nom. Ex parte Tomlin*, 909 So. 2d 283 (Ala. 2003). When addressing this claim, the Alabama Court of Criminal Appeals simply stated:

> "The appellant's argument that applying in his trial the procedures we set forth in *Beck v. [Alabama]*, 396 So. 2d 645 (Ala. 1980), violated the ex post facto clause of the United States Constitution is without merit. The United States Supreme Court in an analogous decision involving Florida's death penalty statute, found no violation of the ex post fact clause existed. *See Dobbert v. Florida*, 432 U.S. 282, 97 S. Ct. 2290, 53 L.Ed.2d 344 (1977)."

*Tomlin*, 909 So. 2d at 277. Additionally, the Alabama Supreme Court discussed ex post facto considerations only as they applied to Tomlin's death sentence. *Ex parte Tomlin*, 909 So. 2d 283, 288 (Ala. 2003) ("The constitutional prohibitions against applying ex post facto laws against criminal defendants foreclose the application of

2007 amended Rule 32 petition, Petitioner argued he is entitled to post-conviction relief because, as the Court of Criminal Appeals phrased it, "the trial court allegedly improperly sentenced him to imprisonment for life without the possibility of parole." (Doc. 12-10, p. 2). The Court of Criminal Appeals, affirming the circuit court's dismissal of the petition (Doc. 12-6, p. 15), concluded this claim is without merit because "the trial court complied with the Alabama Supreme Court's instructions and sentenced the appellant to imprisonment for life without the possibility of parole." (Doc. 12-10, p. 3). The state court complied with the Alabama Supreme Court's order to reduce Petitioner's sentence from death to life without parole. (Doc. 12-10).

In his habeas corpus petition, Petitioner argues that his sentence of life without parole is illegal because the state statutes applicable to his case require the finding of an aggravating circumstance before he could be charged with capital murder or such a sentence may be imposed. (Doc. 1 pp. 50–51). After filing his reply but before the magistrate judge issued her report and recommendation, Tomlin filed a motion for leave to file a supplemental pleading. (Doc. 22). His proposed supplemental pleading references the "Billy Joe Magwood Opinions," a series of cases scrutinizing the same Alabama statutes that appear in Tomlin's case, which reached the United States Supreme Court while his petition remained pending.[4] (Doc. 22-1, p. 16). Petitioner brought this line of cases to the Court's

this new § 13A-5-49(9) aggravating circumstance against Tomlin.").

[4] "Where precedent that is binding in this circuit is overturned by an intervening

attention in his motion to supplement, but this Court failed to rule on the motion or fully address his ex post facto or fair-warning due process claims raised therein. The Court entered an order adopting the magistrate judge's report and recommendation denying the Petition. (Doc. 32). Petitioner appealed, and the 11th Circuit Court of Appeals reversed this Court's decision. (Doc. 40).

On remand from the Eleventh Circuit, this Court ordered supplemental briefing regarding the ex post facto and fair warning due process claims. (Doc. 43). In his supplemental brief, Petitioner asserts that his sentence violates the prohibition against ex post facto laws and the Fourteenth Amendment due process right to fair warning. (Doc. 46, p. 31). In support of this contention, Tomlin raises a two-pronged argument. First, he argues that a plain language interpretation of the Alabama Death Penalty Act of 1975 (the "1975 Act") precludes the state from charging him with capital murder or sentencing him to life imprisonment without parole because an Alabama Code § 13-11-6 aggravating circumstance was not and could not be averred in the indictment. *Id.* Second, he contends that such an indictment or sentence is possible only through the retroactive application of subsequent judicial decisions, which results in the constitutional violations specified above. *Id.* at 41. Respondent counters that Petitioner is precluded from presenting this claim in federal court because Petitioner "never presented [such arguments] to

decision of the Supreme Court, we will permit an appellant to raise in a timely fashion thereafter an issue or theory based on that new decision while his direct appeal is still pending in this Court." *United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015).

the Alabama courts." (Doc. 47, p. 7). Alternatively, Respondent contends that the constitutional claim is without merit for two reasons. First, Respondent argues that Petitioner's case is factually distinguishable from the line of cases finding the constitutional violation presently alleged. *Id.* at 9. And second, "[a]lthough not eligible to receive a death sentence based only on the offense charged, when Tomlin was charged with a capital offense under § 13-11-2, he was clearly given notice he was subject to a minimum sentence of life in prison without parole." *Id.* at 16. "If no post-verdict aggravating circumstances were found, the statute provided for life imprisonment without parole for conviction" of a capital felony. *Id.*

In accordance with the remand order, this Court must first determine which claims are properly before it. (Doc. 40, p. 5).

## II.     Whether Petitioner's Claims are Properly Before the Court

In order to be properly before this Court, Petitioner must have exhausted his claims and followed all procedural prescriptions. The Court evaluates each requirement in turn.

### a.  Exhaustion of Claims

Section 2254 generally requires petitioners to exhaust all available state-law remedies. 28 U.S.C. § 2254(b)(1)(A). In that regard, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights . . .. Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Lamarca v. Secretary, Dep't of*

7

*Corrections*, 568 F.3d 929, 936 (11th Cir. 2009) (citations omitted).  A federal court should dismiss a state prisoner's federal habeas petition if the prisoner has not exhausted all available state remedies as to his federal claims.  *See Roase v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. 2254(b) (codifying this rule).  The exhaustion requirement is grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights.

A key element to the exhaustion requirement is that a federal claim be "fairly presented" to a state's highest court, either on direct appeal or collateral review.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  "It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made."  *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (citing *Picard*, 404 U.S. at 275–76 and *Anderson v. Harles*, 459 U.S. 4, 6 (1982)).  Rather, to ensure state courts have the first opportunity to decide the federal issue, a state prisoner must "present the state courts with the same claim he urges upon the federal courts."  *Picard*, 404 U.S. at 276 (citations omitted).  A word-for-word recitation of the claim is not required, but the claim must be "such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation."  *Kelley*, 377 F. 3d at 1344–45.  And a court should liberally construe *pro se* habeas corpus petitions.  *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013).  But that does not mean a court is

expected to infer a *pro se* petitioner's federal claim "out of thin air*." Landers v. Warden*, 776 F.3d 1288, 1296 (11th Cir. 2015) (finding *pro se* petitioner's claim not exhausted when no supporting cases were cited and no reference to the Fourteenth Amendment or Due Process was made).

Respondent does not contend that Petitioner failed to raise an argument before the Alabama courts. Instead, Respondent contends that what "Tomlin presented . . . to the Alabama courts was an allegation the trial court lacked jurisdiction to impose a sentence of life without parole on the indictment because of the language of the statute." (Doc. 47, p. 7). Thus, he made a state law claim to the Alabama courts and not the constitutional claim he now asserts. *Id.*

The record of this case is voluminous, and the procedural history is convoluted. Nonetheless, the Court is satisfied that Petitioner, acting *pro se*, fairly presented his ex post facto and due process claim to the Alabama courts. To be sure, in his Rule 32 post-conviction proceeding with the state trial court, Petitioner argued that the indictment charging him with capital murder failed to aver a "corresponding aggravating circumstance."[5] (Doc. 12-4, p. 93). Citing the relevant death penalty statute, ALA. CODE § 13-11-1 (1975), he argued that a capital murder indictment "devoid of aggravating circumstances" precluded a defendant from being sentenced to *either* death *or* life without the possibility of parole. *Id.* Petitioner cited the Alabama Constitutions Ex Post Facto Clause in support of this claim. *Id.*

---

[5] This particular argument is contained in Petitioner's Amended Rule 32 Petition. The state trial court considered the amended petition in its decision. See (Doc. 12-4, p. 18).

at 94. That fact that Petitioner failed to reference the United States Constitution Ex Post Facto Clause is not fatal. Petitioner averred that the state trial court's actions "violated [his] substantive [r]ight to due process" under the United States Constitution. *Id.* A reasonable reader would understand Petitioner's due process argument as including an ex post facto component. *See Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (reasoning that ex post facto protections are inherent in due process).

After the trial court denied his post-conviction action, Petitioner appealed to the Alabama Court of Criminal Appeals. See (Doc. 12-7, pp. 1–78). Although it was not word-for-word, Petitioner's appeal brief made an argument parallel to his trial court pleading in Claim VII-1. First, he argued that his sentence was illegal due to the indictment's absence of an "aggravating circumstance enumerated" in §13-11-6. *Id.* at 68. In making this argument, Petitioner specifically cited the Ex Post Facto Clause. *See id.* at 67 (citing U.S. Const. art. 1, § 10). Second, Petitioner specifically stated that his sentence of life imprisonment without parole violates the right to due process guaranteed by the United States Constitution. *Id.* at 62. He argued that he was acquitted of any § 13-11-2 capital felonies with corresponding § 13-11-6 aggravating circumstances. *Id.* at 68. He also argued that the indictment contained no § 13-11-6 aggravating circumstance. "As such," he argued, his "sentence is illegal." *Id.* at 68. A reasonable reader would understand Petitioner's *pro se* legal and factual basis to be constitutional and grounded in the prohibition of ex post facto laws and due process protections. His argument was not hidden

within the pleading, nor was it a moving target, shifting with the turn of each page. *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (explaining that exhaustion requires more than scattering some makeshift needles of federal claims in the haystack of the state court record).

As a last point of potential relief in the Alabama court system, Petitioner filed a petition for writ of certiorari with the Alabama Supreme Court. (Doc. 12-12). He again argued that his sentence is invalid due to his ineligibility for life without the possibility of parole because no aggravating circumstance was averred in the indictment. *Id*. at 10. Although his foundation for potential review rested in the ex post facto application of law, Petitioner specifically referenced his argument in the appellate court that dealt with federal due process protections, too. *See Id*. at 9. Therefore, given the *pro se* nature of Petitioner's pleading, the Court is satisfied that a reasonable reader would have interpreted his argument to also contain a federal due process element.

In the instant matter, Claim XXX is the claim at issue. (Doc. 1, p. 50). Claim XXX alleges that a sentence of life without the possibility of parole violates Petitioner's right under the "Fourteenth Amendment[ ] (due process and equal protection of the law) as guaranteed in the United States Constitution." *Id*. at 51. This argument is grounded in a manner similar to that plead in state court: the indictment failed to expressly aver aggravating circumstances. *Id*. Although Petitioner does not argue the constitutional guarantee against the ex post facto application of law, it is not fatal for the same reason state above: such a limitation

is inherent in the principles of due process.  *See Rogers*, 532 U.S. at 456.  Thus, a common thread runs through Petitioner's pleadings that would lead a reasonable reader to understand the legal basis and factual foundation of his claim as constitutional.  Moreover, Respondent conceded in his answer that "Tomlin's claims have been fully exhausted through available state remedies."  (Doc. 9, p. 11).  Therefore, the Court finds Petitioner fairly presented his claims to the Alabama courts and met the exhaustion requirement.

### b.  Procedural Bar

Respondent argues that Petitioner is procedurally barred from bringing the instant action because he filed his constitutional claims outside Alabama's one-year statute of limitation for post-conviction proceedings.  (Doc. 47, p. 8).  Respondent also argues that any claim Petitioner raised was jurisdictionally, not constitutionally based,  Id at 7, and that therefore, the state court's denial rests on adequate and independent state grounds.  Petitioner, however, argues that his claims were federal claims and not procedurally barred because the state courts failed to expressly assert such a bar.  (Doc. 48, p. 14).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under this doctrine, "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim."  *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  "[A]

procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Therefore, it is insufficient that the state court could have procedurally barred a federal claim. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). It must actually do so. *Id.*

Even if a claim is procedurally barred, a federal court may reach the merits of a claim if the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has "not identified with precision exactly what constitutes 'cause' to excuse a procedural default." *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000). Nonetheless, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Actual prejudice goes beyond mere error and reaches a level that works to a defendant's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 172 (1982).

A fundamental miscarriage of justice occurs when a "constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant,*

499 U.S. 467, 494 (1991). In order to show actual innocence, a petitioner must present "reliable evidence . . . not presented at trial" such that "it is more likely than not that no reasonable juror would have convicted him of the underlying offense." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (internal quotation marks omitted). Therefore, the "actual innocence" exception requires more than a showing that the petitioner is merely guilty of some lesser degree of wrongdoing. *Rozzelle v. Sec., Fla. Dept. of Corr.*, 672 F.3d 1000, 1017 (11th Cir. 2012).

Petitionr does not argue cause and prejudice or actual innocence, so the only question is whether the state court clearly invoked a procedural bar. In an Alabama post-conviction proceeding, a procedural bar applies to constitutional claims filed more than "one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals . . . ." Ala. R. Crim. P. 32.2(c). On direct appeal of his conviction, Petitioner filed a writ of certiorari with the Alabama Supreme Court after the appellate court denied his claim. The Alabama Supreme Court denied certiorari on March 18, 2005. (Doc. 12-1). The Alabama Court of Criminal Appeals' decision became final on the same day. (Doc. 12-2). Therefore, Petitioner faced a March 18, 2006 deadline for post-conviction constitutional claims. Petitioner, however, waited until December 2006 to begin his post-conviction proceeding with the state court. Further, the argument at issue, amendment three of the amended post-conviction pleading, was not before the trial court until August 2007. (Doc. 12-4, p. 92-95). Nonetheless, the trial court considered all claims together. (Doc. 12-4,

p. 18.)

The state trial court's consideration of Petitioner's claims can be categorized in two ways: (1) claims denied for lack of proper specificity under Rules 32.6(b) and 33.3 (sic) of the Alabama Rules of Criminal Procedure (Doc. 12-4, pp.19–20), and (2) claims preluded by the statute of limitations under Rule 32.2(c) of the Alabama Rues of Criminal Procedure. *Id*. The trial court placed the claim at issue into the first category. The Court finds this important for several reasons. First, there is no doubt that the instant claim was not procedurally barred when eight other claims were unequivocally labeled as such and this one was not. *See* (Doc. 12-4, p. 20). Second, within the Eleventh Circuit, dismissal under Rule 32.6 of the Alabama Rules of Criminal Procedure is deemed a ruling on the merits in a federal habeas action and not a procedural bar. *See Boyd v. Alabama Dept. of Corr.*, 697 F.3d 1320, 1331 (11th Cir. 2012).

The Court of Criminal Appeals evaluated Petitioner's claims in a similar fashion.[6] That court divided Petitioner's claims into (1) those claims procedurally barred and (2) those claims found to be without merit. The instant claim fell into the latter. The appellate court found in relevant part:

> The appellant filled his petition more than one year after this court issued a certificate of judgment. Therefore, claims 1, 3, and 5 are precluded because they are time-barred. See Rule 32.2(c), Ala. R.

---

[6] "When the last state court rendering judgment affirms without explanation, we presume that it rests on the reasons given in the last reasoned decision." *Powell v. Allen*, 602 F.3d 1263, 1268 n.2 (11th Cir. 2010) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05 (1991)). The Alabama Supreme Court summarily denied Tomlin's writ with no opinion. (Doc. 12-13). Therefore, the appellate court decision is the last state decision, and the proper decision to decide the procedural default issue.

Crim. P.

***

Finally, with regard to claim 4, after this court [sic] affirmed the appellant's conviction and sentence of death, the Alabama Supreme Court "reverse[d] the judgment of the Court of Criminal Appeals as to Tomlin's sentence and remand[ed] the case for that court to instruct the trial court to resentence Tomlin, following the jury's recommendation of life imprisonment without the possibility of parole." *See Tomlin v [Alabama]*, 909 So. 2d 283, 287 (Ala. 2003). On remand, the trial court complied with the Alabama Supreme Court's instructions and sentenced the appellant to imprisonment for life without the possibility of parole. *See Tomlin v. [Alabama]*, 909 So. 2d 290 (Ala. Crim. App. 2004). Therefore, the appellant's argument is without merit.

(Doc. 12-10, pp. 2–3). Although the appellate court's wording for Claim 4 did not exactly mirror Petitioner's, the Court is satisfied that it understood the nature by its characterization: "the trial court allegedly improperly sentenced [Petitioner] to imprisonment for life without the possibility of parole." (Doc. 12-10 at 2). It is clear from this language that the appellate court declined to procedurally bar Claim 4 when it did so to Claims 1, 3, and 5. Instead, Claim 4 was specifically found to be *without merit*. This language is no accident, and the Court gives it due weight. Such weight dictates that adequate and independent state law grounds do not procedurally bar Petitioner's claim. *Cf. Cumble v. Singletary*, 997, F.2d 715, 720 (11th Cir. 1993) (concluding that a state court decision finding appellant's claim had "no merit" was not based on state procedural grounds).[7] Therefore, under the "plain statement" rule, the

---

[7] Furthermore, Respondent's argument that Claim 4 was denied on jurisdictional grounds is not well taken. The appellate court did not classify Claim 4 as jurisdictional like it did Claim 2: "the district court allegedly did not have jurisdiction to conduct a felony trial." *Id.* at 2. Under Claim 4, the appellate court

16

Court is bound to evaluate Petitioner's federal claims in this habeas

proceeding.  *See Harris*, 489 U.S. at 263.

## III.    The Antiterrorism and Effective Death Penalty Act of 1996

Having determined that Petitioner's claims are properly before the Court, it

is necessary to identify the level of deference afforded to the state court decision.

Based on the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

district court cannot grant a petition for writ of habeas corpus on behalf of a person

in custody pursuant to a state court judgment unless the claim "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States;

or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

2254(d); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (outlining the

habeas standard in § 2254).  "[A] state court acts contrary to clearly established

federal law if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[its] precedent.'" *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1333 (11th Cir. 2009)

(second alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 406

(2000)).  When a state court "identifies the correct governing legal rule . . . but

unreasonably applies it to the facts of the particular state prisoner's case," a state

court's decision involves an unreasonable application of clearly established federal

does not use the word jurisdiction at all.

law. *Williams*, 529 U.S. at 407.  An unreasonable application of clearly established federal law may also occur when a state court "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

A state court's decision is entitled AEDPA deference even if the state court provides no reasoning for its ruling.  If a state court summarily denies a claim without explanation, the petitioner must show there was no reasonable basis for the state court to deny relief. *Harrington v Richter*, 562 U.S. 86, 98 (2011).  This requires a federal habeas court to "determine what arguments or theories supported, or . . . could have supported, the state court's decision." Id. at 786.  The court then must whether "whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent" with a prior decision of the Supreme Court. *Id.*

The § 2254 habeas standard "is difficult to meet." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013).  And such a high bar is no mistake. *Ritcher*, 562 U.S. at 102.  Section 2254 habeas relief "functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (internal citations and quotation marks omitted).  Putting this standard into practice in the instant matter, the Court is cognizant that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." *Hill v. Humphrey*, 662 F.3d 1335, 1355 (11th Cir. 2011).

As an initial matter, Petitioner argues that the state court decision did not address the merits of his claims and, therefore, is not due AEDPA deference. He contends that a merits evaluation required the state court to evaluate the "intrinsic rights and wrongs" of his claims. (Doc. 46, p. 46). In support of this position, Petitioner cites *Johnson v. Williams*, 133 S. Ct. 1088 (2013). Alternatively, Petitioner argues AEDPA deference is not due because Respondent failed to "invoke" such deference. (Doc. 48, pp. 18–19).

Petitioner misses the mark with *Johnson*. Although the *Johnson* Court discussed when a claim is evaluated "on the merits," *Johnson*'s focus was whether the *Harrington v. Richter*, 562 U.S. 86 (2011), presumption was rebuttable. *Richter* held that state court decisions summarily rejecting claims, even those including federal issues later pursued in federal court, are presumed adjudicated on the merits. 562 U.S. at 97–100. *Johnson* held that a petitioner may rebut this presumption with evidence that "leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court." 133 S. Ct. at 1097. In such a situation, AEDPA deference does not apply. Id.

Petitioner failed to overcome the *Richter* presumption. The state court specifically found the claim at issue "without merit." (Doc. 12-10, p. 3). This phrase is dispositive. *See Moritz v. Lafler*, 525 Fed. Appx. 277, 284 (6th Cir. 2013) (finding a state court's opinion that identifies a claim as "without merit" enough to invoke AEDPA deference). And when Petitioner quotes *Johnson* regarding a federal claim being rejected out of "sheer inadvertence" (Doc. 46, p. 46), it is out of context. In

that sense, the Court was speaking to a claim being unaddressed through oversight. *See Johnson*, 133 S. Ct. at 1097. That did not happen here. The state court squarely dealt with the claim at issue in deciding what it termed "Claim 4." (Doc. 12-10, p. 2). Therefore, Petitioner failed to show that the state appellate court decision should be denied AEDPA deference.[8]

In addition, Petitioner's argument that Respondent waived the "contention that AEDPA deference should apply" does not hold water. See (Doc. 48, pp. 18–19). "[T]he standard of review under AEDPA cannot be waived by the parties." *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009), cert. denied, 559 U.S. 993 (2010); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (holding that AEDPA deference "is not a procedural defense, but a standard of general applicability for all petitions filed by state prisoners after the statute's effective date presenting claims that have been adjudicated on the merits by a state court"). AEDPA "is, unlike exhaustion, an unavoidable legal question we must ask, and answer, in every case." *Gardner*, 568 F.3d at 879. Therefore, AEDPA deference applies.

### A. Clearly Established Federal Law

Finding AEDPA deference due, it is necessary to identify the "clearly established Federal law, as determined by the Supreme Court of the United States"

---

[8] Besides, to say that the state appellate court did not decide the federal issue on the merits works to Tomlin's detriment. If the federal issue was not addressed on the merits, what issue was found to be without merit? Was it the state jurisdictional issue? If so, this means that Claim 4 was decided on adequate and independent state procedural grounds. Thus, Tomlin's present claim would be procedurally barred and not properly before the Court. *See Harris v. Reed*, 489 U.S. 255, 260 (1989).

that applies to this case and whether the state court arrived at a conclusion that was contrary "to that reached by th[e] Court on a question of law or if the state court decide[d] [this] case differently than the Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "Avoiding th[is] pitfall[ ] does not require citation [to] cases -- indeed, it does not even require awareness of [binding] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "Clearly established Federal law for the purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the] Court's decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Additionally, only those holdings set fort as of the time the state court renders its decision are applicable. *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

In support of his alleged constitutional violations, Tomlin cites *Bouie v. City of Columbia*, 378 U.S. 347 (1984), *Rogers v. Tennessee*, 532 U.S. 451 (2001), as the clearly established Federal law. (Doc. 46, p. 41).

### i.  Bouie v. City of Columbia

During the height of the civil rights movement, two African American college students refused to leave a restaurant after a "no trespassing" sign was posted and the manager asked them to leave. *Bouie*, 378 U.S. at 348. Police arrested the students and charged them with criminal trespass in violation of "s 16–386 of the South Carolina Code of 1952 (1960 Cum. Supp.)." Id. at 349. The terms of the statute defined criminal trespass as "'entry upon the lands of another *** after

notice from the owner or tenant prohibiting such entry ***.'" *Id.* (citation omitted).

In affirming the students' conviction, the South Carolina Supreme Court relied on

*City of Charleston v. Mitchell*, 123 S.E. 2d 512 (S.C. 1961), which was decided after

the "sit-in" demonstration occurred. *Mitchell* "construed the statute to cover not

only the act of entry on the premises of another after receiving notice not to enter,

but also the act of remaining on the premises of another after receiving notice to

leave." Id. at 350. The students argued the court's interpretation and retroactive

application of the statute violated the "requirement of the Due Process Clause that

a criminal statute give fair warning of the conduct which it prohibits." *Id.* In

writing for the Court, Justice Brennan held that the judicial interpretation

constituted a fair warning violation of the Due Process Clause.

In reaching this holding, the Court identified two instances in which a fair

warning violation may arise: (1) statutory language that is vague or overbroad or (2)

"from an unforeseeable and retroactive judicial expansion of narrow and precise

statutory language." *Id.* at 352. The thrust of the second potential violation is that

"an unforeseeable judicial enlargement of a criminal statute, applied retroactively,

operates precisely like an ex post facto law, such as Art. I, s 10 of the Constitution

forbids." *Id.* at 353. A law applies in an ex post facto manner when a legislative

enactment has one of four effects: (1) makes an act innocent when done criminal

after commission; (2) "aggravates a crime, or makes it greater than it was, when

committed"; (3) changes a punishment by making it greater than the punishment

associated with the law when the act is committed; and (4) alters evidentiary rules

so that less or different evidence is required to convict a defendant than was required when the act is committed. *Calder v. Bull*, 3 Dall. 386, 390 (1798) (*seriatim* opinion of Chase, J.) (emphasis deleted). It stands to reasons that the Due Process Clause prohibits the judiciary from exacting the same evil the Ex Post Facto Clause prohibits the legislature from enacting. Thus, when the "judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," the due process right of fair warning is violated if the judicial construction is retroactively applied. *Bouie*, 378 U.S. at 354.

### ii.     Rogers v. Tennessee

In *Rogers v. Tennessee*, 532 U.S. 451 (2001), the Court interpreted *Bouie* and illustrated when the retroactive application of a judicial construction complies with the fair warning requirement. A Tennessee jury convicted Wilbert Rogers of second-degree murder when a man died approximately fifteen months after Rogers stabbed him. Id. at 454. After his conviction, he appealed his case and raised the common law "year and a day rule" as a defense.[9] *Id.* When the Tennessee Supreme Court decided his case, it abolished the "year and a day rule" and retroactively applied the abolition to Rogers. *Id.* at 455. The state court rejected Rogers' contention that such an action violated the Ex Post Facto Clause of the State and

---

[9] The "year and a day rule" is a "common-law principle that an act causing death is not homicide if the death occurs more than a year and a day after the act was committed." BLACK'S LAW DICTIONARY (10th ed. 2014).

Federal Constitution and further held that its actions comported with *Bouie*. Id. The United States Supreme Court affirmed the state court decision on appeal. Id. at 456.

In reaching its decision, the Court rejected as dicta language in *Bouie* suggesting that fair warning protections are an absolute prohibition on the judiciary in the same manner that ex post facto prohibitions are on the legislature. *Id.* at 459. Moreover, strict application of the Ex Post Facto Clause on courts through due process cuts against "clear constitutional text." *Id.* at 460. "It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other." *Id.*

Given this, the Court reaffirmed that the proper measure of a fair warning claim is whether the "judicial alteration'[s]" retroactive application was "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id.* (quoting *Bouie*, 378 U.S. at 354). In finding Tennessee's abolition of the "year and a day rule" expected and defensible, the Court reasoned in three parts: (1) the reason for the rule no longer existed, (2) "practically every court recently" to have considered the rule found "it without question obsolete," and (3) the rule "had only the most tenuous foothold as part of the criminal law" at the time of Rogers' crime. Id. at 463–64. As such, the Court held that the state court's abolition was not an "unfair and arbitrary judicial action against which the Due Process Clause aims to protect." *Id.* at 467. Instead, "the court's decision was a routine exercise of common law decisionmaking in which the

court brought the law into conformity with reason and common sense." *Id.*

Synthesizing *Bouie* and *Rogers*, it is clear that the absolute bar against ex post facto laws is inapplicable in a judicial interpretation context. More deference is afforded to judicial interpretations retroactively applied to outmoded common law, whereas judicial broadening retroactively applied to narrow legislatively enacted law is not. And this principle of Federal law was clearly established at the time of the state court's decision. Further, in analyzing whether a judicial broadening is "unexpected and indefensible" or in "conformity with reason and common sense," it is necessary to analyze the "statutory language at issue, its legislative history, and judicial constructions of the statute." *Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir. 2004).

In evaluating whether the state court's decision is contrary to the above, the Court notes that the state court's post-conviction decision provides no reasoning beyond finding Petitioner's sentence is as the Alabama Supreme Court ordered. See (Doc. 12-10, p. 2). The Alabama Supreme Court opinion ordering his sentence of life imprisonment without parole offers no guidance because Petitioner's argument regarding his sentence of death on direct appeal differs from his post-conviction argument, which is the argument presently before the Court. *See Ex parte Tomlin*, 909 So. 2d 283, 286 (Ala. 2003) (deciding Petitioner's sentence of death was invalid because the trial judge overrode a unanimous jury recommendation of life imprisonment without parole). Thus, it is necessary to "determine what arguments or theories supported, or . . . could have supported, the state court's decision."

*Richter*, 562 U.S. at 102. This determination starts with an analysis of the 1975 Alabama Death Penalty Act's inception and evolution.

## B. 1975 Alabama Death Penalty Act

On the heels of *Furman v. Georgia*, 408 U.S. 238 (1972),[10] the Alabama legislature enacted the 1975 Alabama Death Penalty Act (the "1975 Act"). ALA. CODE § 13-11-1, *et seq.* (1975). The evolution of the 1975 Act can be broken down into three phases: (1) the strict language of the 1975 Act; (2) the judicial interpretation of the 1975 Act by *Beck v. Alabama*, 396 So. 2d 645 (1981), and *Ex parte Kyzer*, 399 So. 2d 330 (1981); and (3) repudiation of the 1975 Act with the 1981 Alabama Death Penalty Act (the "1981 Act").

### i.     Phase 1

The 1975 Act pertained to the commission of all capital offenses occurring from March 7, 1976 until June 30, 1981.[11] It promulgated that, "the death penalty or a life sentence without parole shall be fixed as punishment only in the cases and in the manner herein enumerated and described in section 13-11-2." ALA. CODE § 13-11-1 (1975).

---

[10] In *Furman*, the Supreme Court unequivocally denounced the unbridled discretion of a jury or sentencing authority to impose the death penalty, "concluding that unguided sentencing led to the discriminatory, arbitrary, and capricious imposition of the death penalty in violation of the Eighth Amendment." *Johnson v. Singletary*, 938 F.2d 1166, 1179 (11th Cir. 1991). Prior to *Furman* and since 1841, an Alabama jury had the unguided discretion to impose such a sentence. *See Beck v. Alabama*, 396 So. 2d 645 (1981) (surveying the history of Alabama's death penalty).

[11] In 1978, the Alabama legislature transferred its capital murder statutes to Alabama Code Sections 13A-5-30 through 13A-5-38. (Supp. 1978). This Order makes use of the original statute numbers.

Section 13-11-2 identifies Alabama's capital felonies and applies to the guilt phase of a capital proceeding. This section decrees that a jury "shall fix the punishment at death" if the criminal defendant is found guilty of a capital felony. ALA. CODE § 13-11-2(a) (1975). However, this mandatory punishment only applies when "the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment . . . ." *Id.* Relevant to this matter, § 13-11-2(a)(10) identifies "[m]urder in the first degree wherein two or more human beings are intentionally killed by the defendant by one or a series of acts" as a capital felony.[12]

The statutory scheme provided that upon conviction of a capital felony, the capital proceeding shifted to the sentencing phase. See § 13-11-3. At this point, the trial court was to hold a second hearing, without jury participation, to determine whether it would "sentence the defendant to death or to life imprisonment without parole." *Id.* In order to aid in this decision, evidence as to "any matter" the court deemed relevant to sentencing was to be presented, including evidence of the eight §

---

[12] At the time of the act in question, Alabama defined first-degree murder as follows:

> [e]very homicide, perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or the attempt to perpetrate, any arson, rape, robbery, or burglary, or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life . . . .

ALA. CODE § 13-1-70 (1975).

13-11-6 aggravating circumstances and seven § 13-11-7 mitigating circumstances. *Id.* "Notwithstanding the fixing of the punishment at death by the jury," the trial court could refuse to impose a sentence of death and instead sentence a defendant to life imprisonment without parole. § 13-11-4. Such a determination was to be made after weighing the § 13-11-6 aggravating and § 13-11-7 mitigating circumstances. *Id.* Upon upholding a jury recommended sentence of death, the 1975 Act required the trial judge to "set forth in writing, as the basis of a sentence of death," one or more of the enumerated aggravating circumstances in § 13-11-6 it found present and support a sentence of death. *Id.* Any mitigating circumstances the trial court found did not outweigh the sentence of death must also be spelled out. *Id.*

### ii.    Phase 2

Phase 2 consists of the judicial interpretation of the 1975 Act through two Alabama cases. In the first case, the Alabama Supreme Court issued an opinion severing a portion of the 1975 Act and revamping the capital sentencing procedure. *Beck v. Alabama*, 396 So. 2d 645 (1980). In *Beck*, an Alabama jury convicted Gilbert Beck of capital murder and fixed his punishment at death, per the mandatory language of the 1975 Act. On review, the court identified two issues, the second of which is relevant to this matter. The court framed the second issue as whether the jury's mandatory death sentence after finding Beck guilty of a capital felony was constitutional. *Id.* at 647. On this issue, the court held that the mandatory requirement could not be severed from the 1975 Act and the entire Act remain feasible. *Id.* at 659. So the court construed "the requirement that the jury fix the

penalty at death to be permissive instead of mandatory." *Id.* at 660.

In a further attempt to comport with constitutional requirements, the court implemented procedural changes in capital cases that, although classified as bifurcated, trifurcated the process into a guilt phase and a sentencing phase made up of two parts. *Id.* at 662. The central issue of the guilt phase of a capital proceeding was whether the state proved beyond a reasonable doubt that the defendant is guilty of each element of a capital felony. *Id.* at 662. If a jury convicted the defendant of the capital felony, a sentencing hearing was held. The central issue of the sentencing phase became whether the aggravating circumstances outweighed the mitigating circumstances, which would justify a sentence of death. *Id.* at 662. A fundamental change i implemented in the sentencing phase is that the jury would now participate in a sentencing hearing and make a sentence recommendation. *Id.* at 659. In making a sentence recommendation to the judge, the jury would consider the § 13-11-6 aggravating and § 13-11-7 mitigating circumstances. *Id.* at 662. If the jury recommended a sentence of death, the trial court would "hold a hearing as mandated by" § 13-11-3 and § 13-11-4. *Id.* at 663.

In the second case to judicially interpret the 1975 Act, *Ex parte Kyzer*, the Alabama Supreme Court reviewed a conviction based on an indictment charging a capital felony akin to the present: first-degree murder of "two or more human beings" "by one or a series of acts." *Kyzer*, 399 So. 2d 330, 332 (Ala. 1981). At the sentencing hearing, the trial court upheld the jury's recommendation of death based

29

on "the 'capital felony [being] especially heinous, atrocious or cruel,' an aggravating circumstance found in Code 1975, s 13-11-6(8)." *Id.* at 333.

Citing *Godfrey v. Georgia*, 446 U.S. 420 (1980), the Alabama Supreme Court found that the murders were not "especially heinous, atrocious, or cruel" because they were not "conscienceless or pitiless homicides which are unnecessarily torturous to the victim." *Id.* at 334. Based on the absence of any other § 13-11-6 aggravating circumstance, the court found itself faced with what it classified as an "anomaly in Alabama's Death Penalty Statute." *Id.* at 334. The court asked itself whether the death penalty would be available if _Kyzer_ was retried since there was not a corresponding aggravating circumstance in § 13-11-6 for the capital felony contained in the indictment. *Id.* The court concluded that a "literal and technical reading of the statute would answer this inquiry in the affirmative, but to so hold would be completely illogical and would mean that the legislature did a completely useless act by creating a capital [felony] for which the defendant could not ultimately receive the death penalty." *Id.* at 337. To right this situation, the court read into the 1975 Act that a trial judge and jury may, in a sentencing hearing, rely on the capital felony in the indictment to support a sentence of death, even if no corresponding aggravating circumstance was included in § 13-11-6. *Id.* at 338.

### iii. Phase 3

Phase 3 of the 1975 Act began when the Alabama legislature enacted a new death penalty act (the "1981 Act"), which expressly repealed the 1975 Act. Act of May 28, 1980, Pub. Act No 80-753, 1980, Acts of Alabama p. 1556–59. The 1981 Act

articulated that it "applies only to conduct occurring after 12:01 A.M. on July 1, 1981. Conduct occurring before 12:01 A.M. on July 1, 1981 shall be governed by pre-existing law, [the 1975 Act]." ALA. CODE § 13A-5-57.

The 1981 Act statutorily implemented many of the changes made by the Alabama Supreme Court in *Beck* but rejected *Kyzer*'s rule on aggravating circumstances. See ALA. CODE § 13A-5-45(f) ("Unless at least one aggravating circumstance as defined in section 13A-5-49 exists, the sentence shall be life imprisonment without parole.") Consequently, under the 1981 Act, a trial court could sentence a defendant to life imprisonment without parole after conviction of a capital felony only if it found no corresponding aggravating circumstance, and no other aggravating circumstance was present.

After nearly three decades, the Alabama Supreme Court rejected *Kyzer*'s expansion of the 1975 Act's § 13-11-6 aggravating circumstances. *See Ex parte Stephens*, 982 So. 2d 1148 (2006). The *Stephens* court found this portion of *Kyzer* to be dicta and unpersuasive. Id. at 1153. Further, the court reasoned that "the dicta in *Kyzer* conflicts with the plain language of the Alabama Criminal Code (as the *Kyzer* Court itself acknowledged)." Section 13-A-5-49, Ala. Code 1975, states that '[a]ggravating circumstances shall be the following.' The language 'shall be'—as opposed to 'shall include'—indicates that the list is intended to be exclusive." *Id.* at 1153.

## C. AEDPA Analysis of the State Court's Decision

Petitioner argues that his "sentence of life imprisonment without parole

violates the ex post facto principle of fair warning at the heart of the Due Process Clause of the United States Constitution." (Doc. 46, p 45). Respondent counters that no constitutional violation occurred because Petitioner does not face a death sentence. (Doc. 47, p. 16). Further, Respondent contends the 1975 Act gave fair notice that Petitioner faced not only a death sentence but also a minimum of life imprisonment without parole if convicted. *Id.*

### i.      Ex Post Facto Application of Law

To begin with, Petitioner's ex post facto argument is misplaced as an independent argument. In essence, the thrust of his argument is that he suffers from a change in punishment or the infliction of greater punishment due to the retroactive application of law. *See Calder*, 3 Dall. at 390. The United States Constitution commands that "[n]o State shall . . . pass any [ ] ex post facto Law . . . ." U.S. Const. art. I, § 10, cl. 1. The Ex Post Facto Clause is a "limitation upon the powers of the Legislature." *Rogers*, 532 U.S. at 456. Assuming arguendo that Petitioner suffers from an ex post facto application of law, it is clear that the Alabama legislature had no hand in it. The disputed act was the doing of an Alabama court. Therefore, the appellate court did not act contrary to clearly established federal law in denying the ex post facto claim. Moreover, in as much as the prohibition against ex post facto laws may apply, it is in the sense that such protections are "inherent in the notions of due process." *Id.* at 456. So when the Court evaluates whether Petitioner's indictment and sentence are contrary to the right to fair warning contained in the Due Process Clause, the evaluation

necessarily includes the ex post facto question.

### ii.     The State Court Decision Is Not Contrary To *Bouie*

Petitioner contends that his due process right to fair warning was violated in that the only way he could be indicted for a capital offense, tried, and sentenced to life imprisonment without parole is through the retroactive application of *Ex parte Kyzer*, 399 So. 2d 330 (1981), and *Beck v. Alabama*, 396 So. 2d 645 (Ala. 1981), which were unexpected and indefensible under *Bouie. (*Doc. 46, pp. 41–45).  In support of this claim, Petitioner cites *Magwood v. Warden, Alabama Department of Corrections*, 664 F.3d 1340 (11th Cir. 2011), for the proposition that *Kyzer* has already been found to violate the due process right to fair warning.[13]  *Id.* at 45. Petitioner's characterization of *Magwood* is correct, but his situation is distinguishable from that in *Magwood*.

Writing for the Eleventh Circuit, Judge Black issued an opinion interpreting *Bouie* as it relates to the 1975 Act and aggravating circumstances that support a death sentence.  *Magwood*, 664 F.3d 1340 (11th Cir. 2011).  Billy Joe Magwood murdered the Coffee County Sheriff on March 1, 1979, and a jury convicted and sentenced him to death in June 1981.  *Id.* at 1342.  After receiving partial federal habeas relief, Magwood sought further habeas relief after the state court resentenced him to death.  *Id.*  He argued that the trial court erred when it found in the second sentencing hearing that the capital felony he was found guilty of, murder

---

[13] A circuit court decision is not clearly established Federal law, but it is persuasive in determining what law is clearly established.  *Renico v. Lett*, 130 S. Ct. 1855, 1866 (2009).

of a law enforcement officer, was an aggravating circumstance supporting a death sentence although it was not specifically enumerated in § 13-11-6. *Id.* Magwood argued the only way the capital felony itself constituted an aggravating circumstance supporting a death sentence was by retroactively applying *Kyzer*, and such application constituted a fair warning violation. *Id.* at 1346.

The Court agreed with Magwood and concluded that a "capital defendant can raise a *Bouie* fair-warning challenge to a judicial interpretation of a statute that increases his punishment from life to death." *Id.* at 1348. The Court reasoned that it was unexpected and indefensible that *Kyzer* would judicially expand the aggravating circumstances supporting a death sentence to include the aggravated offense that made the initial crime a capital felony, even though it was not enumerated in § 13-11-6. Id. at 1349. Thus, the Eleventh Circuit affirmed the district court's grant of habeas relief. On remand, the trial court resentenced Magwood to life imprisonment without the possibility of parole. (Doc. 47-1, p. 3).

As Respondent points out, Petitioner's reliance on *Magwood* is misplaced. (Doc. 47, p. 12). The instant case is factually distinct from *Magwood*. Billy Joe Magwood faced a death sentence supported by an aggravating circumstance present only because of *Kyzer*; Petitioner does not. The Alabama Supreme Court vacated Petitioner's sentence of death. *Ex parte Tomlin*, 909 So. 2d 283 (Ala. 2003) (vacating Petitioner's death sentence and instructing the trial court to resentence him in accordance with the jury's unanimous recommendation). Now, Petitioner faces life imprisonment without parole, which does not require a judge to consider §

13-11-6 aggravating circumstances. *See* § 13-11-4 (requiring the existence of § 13-11-6 aggravating circumstances "[i]f the court imposes a" death sentence). Moreover, Magwood challenged a judicial decision that increased his punishment from life to death in the sentencing phase of a capital trial. Petitioner attempts to apply the same rational to the guilt phase of a capital trial and argues that he could not even be indicted for a capital offense. This argument is counterintuitive to the holding in *Magwood* which supported a capital conviction and sentence of life imprisonment without parole in the absence of an identifiable or corresponding § 13-11-6 aggravating circumstance. *See Magwood*, 664 F.3d at 1330 (affirming the district court's order vacating Magwood's death sentence but not his conviction).

And although the present case does not deal with the judicial interpretation of a common law principle that had a tenuous foothold in criminal law like that in *Rogers*, it differs from *Bouie* in three material ways. First, the *Bouie* students who conducted "sin-ins" did not have notice "of what the law intended to do" if they remained after notice was posted: make them subject to prosecution for criminal trespass. *See McBoyle v. United States*, 283 U.S. 25, 27 (1931). Here, the 1975 Act spelled out that the first-degree murder of two or more persons in one or a series of acts is a capital felony punishable by death or life imprisonment without parole.[14] *See* § 13-11-1 ("the death penalty or life imprisonment without parole shall be fixed

_____

[14] This point further distinguishes Petitioner's case from *Magwood*, *supra*. Before *Kyzer,* Billy Joe Magwood did not have notice that the sentencing judge intended to use the aggravation that elevated his crime to a capital felony as support for a death sentence.

as punishment only in the cases and in the manner herein enumerated and described in section 13-11-2").

Second, in *Bouie*, the South Carolina legislature had enacted a statute that mirrored the judicial expansion shortly after the "sit-in" occurred. *Bouie*, 378 U.S. at 361. Therefore, it stands to reason that the South Carolina legislature did not intend the original criminal trespass statute to cover those persons who remained after notice was posted. Here, the 1981 Act repealed the 1975 Act, and the Alabama legislature reworded the 1981 Act in 1999. In neither 1981 nor 1999 did the legislature implement language or clarify that the §13-11-6 aggravating circumstances to be relied on during a sentencing proceeding must be averred in the indictment for a defendant to be charged or convicted of a capital felony, much less sentenced to life imprisonment without parole. In fact, the Alabama legislature deleted the introductory paragraph of § 13-11-2, which declared that the offense and aggravation must be averred in the indictment. Section 13-11-2's corollary in the 1981 Act, § 13A-5-40(a), reads in its entirety as follows: "[t]he following are capital offenses." The substance of the capital felonies remained unchanged. Thus, it appears that all the indictment would have to include is the specific capital felony alleged violated under the 1981 Act.

Third, "[s]o far as the words of the statute were concerned, [the *Bouie*] petitioners were given not only no 'fair warning,' but no warning whatever, that their conduct" would violate the precise language of the statute at issue. *Bouie*, 378 U.S. at 355. It is under this principle that Petitioner primarily attempts to animate

a *Bouie* violation with an extensive statutory interpretation argument. See (Doc. 46, pp. 31–41). The premise of his argument is that the plain language of § 13-11-2 of the 1975 Act requires a § 13-11-6 aggravating circumstance to be included in the indictment because "every word and clause must be given effect." *Id.* at 34. Thus, when the legislature included in § 13-11-2 the phrase "charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment," it could mean nothing else but that the § 13-11-6 aggravating circumstance(s) the state may rely on at sentencing and a judge may include in his sentencing order must be spelled out in the indictment. *Id.* Its inclusion is what makes a defendant "death eligible." *See id.* at 29. Based on the absence of such in his indictment, he argues that he is not "death eligible," which means that he cannot be charged with or tried for a capital felony without *Kyzer* being retroactively applied. *Id.* at 32, 41. Petitioner insists that to decide otherwise would create legal incoherence. *Id.* at 41. Respondent counters that death eligibility is not established upon indictment but only after a jury has convicted a capital defendant and the trial judge has found the presence of a § 13-11-6 aggravating circumstance in a sentencing proceeding. (Doc. 47, p. 13). Therefore, the 1975 Act did not require a § 13-11-6 aggravating circumstance to be averred in Petitioner's indictment to be tried for a capital felony under § 13-11-2. *See* (Doc. 47, p. 16).

Several cannons of interpretation guide the Court's evaluation in this matter. The rule of lenity directs that "[s]tatutes creating crimes are to be strictly construed

in favor of the accused," and "the[ ] [statutes] may not apply to cases not covered by the words used . . . ." *United States v. Resnick*, 299 U.S. 207, 209 (1937); *see also, Fuller v. Alabama*, 60 So. 2d 202, 205 (Ala. 1952). Moreover, "criminal statutes should not be 'extended by construction.'" *Ex parte Evers*, 434 So. 2d at 817 (quoting *Locklear v. Alabama*, 282 So. 2d 116 (1973). "Because the meaning of statutory language depends on context, a statute is to be read as a whole." *Ex parte Jackson*, 614 So. 2d 405, 406 (Ala. 1993) (citing *King v. St. Vincent's Hospital*, 502 U.S. 215 (1991)).

Keeping these principles in mind, the plain language of the 1975 Act contemplates that a capital proceeding is to have two parts: the guilt phase, §§ 13-11-1–2, and the sentencing phase, §§ 13-11-3–7. In the guilt phase, § 13-11-1 directs that "the death penalty or a life sentence without parole" shall be enforced only in the manner outlined in § 13-11-2: "when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment . . . ." Fair-minded jurists could agree that the 1975 Act requires an indictment be made up of two parts: an offense and aggravation. Petitioner takes a very narrow approach to the term aggravation, but in doing so he fails to recognize its context in the guilt phase. When § 13-11-2 contemplates two parts to an indictment, it is because each capital felony is made up of two parts: the intentional killing or first-degree murder (offense) *and* the aggravation that elevates the crime to a capital felony. *See Horsley v. Alabama*, 374 So. 2d 363, 367 (Ala. 1978) (finding § 13-11-2 enacted "for the prevention and

punishment of homicides committed under legislatively determined aggravating circumstances"), *rev'd on other grounds*, 100 S. Ct. 3043 (1980).  So consideration must be given to why the phrase "with aggravation" is a necessary part of § 13-11-2 and how it applies to the guilt phase of a capital proceeding, not the sentencing phase.

On this point, the Alabama Court of Criminal Appeals found in relevant part:

> In Alabama, by statute, the aggravating circumstance must be alleged in the indictment where the death penalty is sought. Title 15, s 424(4), Code of Alabama 1940, Recompiled 1958, 1975 Interim Supplement, now s 13-11-2, Code of Alabama 1975.  The aggravating circumstances must be set forth in the indictment because the state is required to give the accused notice that a greater penalty is sought to be inflicted than for a first offense. . . . Under the Death Penalty Statute, the aggravating circumstance is a statutory element of the crime.  Without it, one could not be charged and convicted for "capital murder".  Though the opinion of the jury is advisory only upon the trial judge (see *Jacobs v. [Alabama]*, 361 So. 2d 607, 632 (Ala. Crim. App. 1977), the state must prove the aggravating circumstance and the jury must find the existence of such, even though the enhanced punishment is left to be imposed by the trial judge.

*Wilson v. Alabama*, 371 So. 2d 932, 940–41 (Ala. Crim. App. 1978), *vacated on other grounds*, 448 U.S. 903 (1980).  And when § 13-11-2 uses the phrase "with aggravation," it requires the aggravation as enumerated in § 13-11-2 to be contained within the indictment, not an aggravating circumstance enumerated in § 13-11-6 and used during sentencing.  *See Evans v. Alabama*, 361 So. 2d 666, 670 (Ala. 1978).  In other words, due process requires the state to put the defendant on notice that a non-capital felony has accompanying aggravation, which subjects the defendant to trial for a capital felony.  Therefore, the aggravation to notice or aver

is that which elevates the non-capital felony to a capital felony. Fair-minded jurists could agree that such an interpretation of the 1975 Act does not create the legal incoherence Petitioner insists upon (Doc. 46, p. 39) but is in "conformity with logic and common sense." *See Rogers*, 532 U.S. at 462.

To be sure, the state indicted Petitioner for the violation of § 13-11-2(a)(10): the first-degree murder of two or more persons by one or a series of acts. (Doc. 9-1, p. 15). Under the 1975 Act, first-degree murder alone was not a capital felony. Even more, the first-degree murder of two or more people in unrelated acts was not a capital felony. In such a case, the most a defendant could face would be two separate counts of first-degree murder. *See* ALA. CODE § 13-1-70 (1975). And neither would be punishable by death or life imprisonment without parole. However, when one or a series of acts connects the first-degree murder of two or more people, the Alabama legislature decided that such an act was a capital felony. Richard Brune and Cheryl Moore were killed in one or a series of acts. *Tomlin*, 909 So. 2d at 224. At that point, the state had the opportunity to seek capital punishment. But due process required the state notify Petitioner of its intentions when it sought to try the crime as a capital felony. Thus, the criminal offense and aggravation that made the felony capital must be averred in the indictment. And both the offense and aggravation had to be proven beyond a reasonable doubt in order to be found guilty. In other words, the state had to prove (1) that two or more persons were murdered in the first-degree and (2) such was done in one or a series of acts.

Such an interpretation keeps the reach of § 13-11-2's words within their meaning and is supported by each capital felony that contains a first offense of murder or first-degree murder. *See* §§ 13-11-2 (a)(5), (6), (7), (10), (11), (12), (13), and (14). For instance, murder in the first-degree becomes a capital felony and triable as such "where the victim is a public official" and the murder "stems from . . . his official position." § 13-11-2(a)(11). Or murder in the first-degree becomes a capital felony and triable as such when an aircraft is highjacked with the intent to obtain valuable consideration for its release and the murder is committed in the process. § 13-11-2(a)(12). Based on this, fair-minded jurists could agree that the aggravating circumstances of 13-11-6 are not an element of the crime alleged in § 13-11-2 to be averred in the indictment. Instead, § 13-11-6 circumstances become relevant in the sentencing phase of the proceeding. *See* § 13-11-4; *see also Jacobs*, 361 So. 2d, at 631 (reasoning that the jury fixing the sentence at death was advisory and at that point the judge weighed the aggravating and mitigating circumstances before imposing a death sentence). An indictment containing the offense and aggravation that equaled the capital felony is more than an abstract possibility, having never once been enforced in Alabama.[15] *See Rogers*, 532 U.S. at 466. It

---

[15] In *Bouie*, the Court reasoned that "[i]t would be a rare situation in which the meaning of a statute of another State sufficed to afford a person 'fair warning' that his own State's statute meant something quite different from what its words said." *Bouie*, 387 U.S. at 359–60. The Court does not presume this to be such a "rare situation." But if it were, the popular trend around the time in question would further undermine Petitioner's position. *See* Del. Code. Ann. Tit. 11, 4209 (c) (1979) (requiring disclosure of aggravating circumstances that support a death sentence after a verdict of guilt but before the "punishment hearing); S.C. Code § 16-3-20(B) (Supp. 1980) (same); *Tennessee v. Berry*, 592 S.W. 2d 553, 562 (Tenn. 1980) (finding

happened each time a defendant was indicted for a capital felony, regardless of whether there was a corresponding circumstance in § 13-11-6.[16]  Thus, fair-minded jurists could agree that the state court's denial is not contrary to <u>Bouie</u> or that it unreasonably declined to extend <u>Bouie</u> because the plain langue of the 1975 Act does not require the application of <u>Kyzer</u> for Petitioner to be indicted or tried for a capital felony.

_____

that an indictment need not include the enumerated aggravating circumstances that pertain to sentencing); *Dungee v. Hopper*, 244 S.E. 2d 849, 850 (Ga. 1978) (finding "no merit" in a criminal defendant's contention that due process was violated because an "indictment failed to specify any statutory aggravating circumstances"); *see also Spenkelink v. Wainwright*, 442 U.S. 1301, 1305–06 (1979) (rejecting the opportunity to grant certiorari on whether a defendant is due "some sort of formal notice" in an indictment of "the statutorily prescribed aggravating circumstances" the prosecution intends to rely on for the imposition of a death sentence).

[16] The prior decisions of the relevant state played a role in *Bouie* and *Rogers*.  As to prior decisions supporting this interpretation, the present case stands in somewhat of a temporal irregularity.  Although approved on September 9, 1975, the 1975 Act became effective on March 7, 1976.  Ala. Code § 13-11-9 (1975).  The law in question was in effect for only nine months and twenty-seven days when Petitioner committed the murders he stands convicted of.  This is hardly enough time to create a sufficient body of case law to evaluate the point in question.  Moreover, the differences between the 1975 Act and its predecessors make evaluation of prior case law futile.  Nonetheless, the Court is hard pressed to say that fair-minded jurists would find such an interpretation "so clearly at variance" with the statute.  *Bouie*, 378 U.S. at 356.  In fact, of the decisions announced around this time that this Court surveyed, all of them viewed the indictment and guilt phase of a capital proceeding in accordance with the interpretation above.  *See Horsley v. Alabama*, 374 So. 2d 363, 367 (Ala. Crim. App.) (viewing the fourteen capital offenses enumerated in § 13-11-2 as being made up of homicide with aggravation, *rev'd on other grounds*, 448 U.S. 903 (1980); *Jacobs v. Alabama*, 361 So. 2d 640, 641 (Ala. 1978) ("This case concerns the constitutionality of [the 1975 Act], which provides penalties for certain aggravated homicides."); *Bester v. Alabama*, 362 So. 2d 1282, 1282 (Ala. Crim. App. 1978) (indictment included § 13-11-2 aggravation that murder was committed while defendant was serving a sentence of life imprisonment).

Fair-minded jurists could also agree that the rule of lenity precludes Petitioner's interpretation. Under Petitioner's interpretation, the indictment must include the aggravating circumstance to be used in sentencing regardless of whether it corresponds to the committed offense. For instance, an indictment would have to aver that a defendant "was previously convicted of . . . a felony involving the use or threat of violence" even though it is not an element any capital felony. Such information goes towards the background, criminal history, or even propensity of a defendant and has no bearing on guilt. But Petitioner would have this allegation go back with the jury in the indictment. *See Wilson v. Alabama*, 296 So. 2d 774, 776 (Ala. Crim. App. 1974) ("It is proper for the indictment to go to the jury room with the jury.") Now it is understood that an indictment is not evidence. *Id.* Further, it is presumed that a jury follows a judge's order to such effect. *See Perkins v. Alabama,* 808 So. 2d 1041 (Ala. Crim. App. 1999). But to read the 1975 Act to require prejudicial information in the indictment cannot be said to accord with the rule of lenity or the Constitution. *See Gregg v. Georgia*, 428 U.S. 153, 190 (1976) ("Much of the information that is relevant to the sentencing decision may have no relevance to the question of guilt, or may even be extremely prejudicial to a fair determination of that question.").

Lastly, Petitioner's position regarding "death eligibility" and that life imprisonment without parole is only a "discretionary optional downward departure" fails to overcome the AEDPA standard. *See* (Doc. 49, pp. 22, 37). *Magwood*'s reasoning guides the Court concerning when a defendant becomes "death eligible."

Although the 1975 Act requires the jury to fix the penalty at death upon finding a defendant guilty, this designation of punishment is not final until a judge weighs the aggravating and mitigating circumstances in a sentencing hearing. *Magwood*, 664 F.3d at 1348–49. In a sentencing proceeding, a defendant found guilty by a jury becomes "'eligible' for the death penalty" only when at least one § 13-11-6 aggravating circumstance is found to outweigh any § 13-11-7 mitigating circumstance, which must be articulated in the judge's written sentencing order. *See id.* at 1349. Albeit indirectly, the only punishment the 1975 Act allows a trial judge to impose for a capital conviction in the absence of an enumerated § 13-11-6 aggravating circumstance is life imprisonment without parole. *See* § 13-11-4. Such is the case here. [17] Therefore, fair-minded jurists could agree that the plain language of the 1975 Act gave Petitioner notice that the minimum sentence he would face upon conviction is life imprisonment without parole if he was not found to be "death eligible."

Additionally, this conclusion is the same if the trifurcated proceeding *Beck*

---

[17] Additionally, the 6th Amendment violation addressed in *Hurst v. Florida*, 136 S. Ct. 616 (2016), is inapplicable in this case. In *Hurst* and its predecessor, *Ring v. Arizona,* 536 U.S. 584 (2002), the defendant faced a sentence of death imposed by a judge based on aggravating circumstances found independent of a jury's fact finding. Here, the Alabama Supreme Court reversed the judge's sentence of death and directed the imposition of the jury's recommended sentence of life imprisonment without parole. *Ex parte Tomlin*, 909 So. 2d 283, 287 (Ala. 2003). Further, Petitioner's sentence does not rely on facts not found by a jury. Moreover, it echoes the maximum punishment the Court reasoned a defendant could receive based on the conviction alone: life imprisonment without parole. *See Hurst,* 136 S. Ct. 616, at 622 ("As with Timothy Ring, the maximum punishment Timothy Hurst could have received without any judge-made findings was life in prison without parole.").

implemented is applied, which was the case in the trial below. *Beck* empowered the jury with the ability to recommend the lesser sentence of life imprisonment without parole at a sentencing hearing. *Beck*, 396 So. 2d at 660. Here, the jury unanimously recommended the sentence of life imprisonment without parole. (Doc. 10-1, pp. 64–65). The application of *Beck* was not contrary to or an unreasonable refusal to extend *Bouie* because its procedural changes only "altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Dobbert v. Florida*, 432 U.S. 282, 293–94 (1977).

Therefore, fair-minded jurists could agree that the state court's denial of relief based on the due process right to fair warning is neither contrary to or an unreasonable refusal to extend clearly established Federal law to Petitioner's claim. *See Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011).

For all the foregoing reasons, Tomlin's Petition under 25 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody is **DENIED**.

**DONE** and **ORDERED** this 19th day of April, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE